STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**11-77**


TOMMIE MACK GRANGER

VERSUS

STEPHANIE W. GRANGER


**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 198,383
HONORABLE DONALD THADDEUS JOHNSON, DISTRICT JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

**Richard E. Lee**
**Attorney at Law**
**810 Main St.**
**Pineville, LA 71360**
**(318) 448-1391**
**Counsel for Plaintiff/Appellant:**
**Tommie Mack Granger**

**Henry Howard Lemoine, Jr.**
**Attorney at Law**
**607 Main St.**
**Pineville, LA 71360**
**(318) 473-4220**
**Counsel for Defendant/Appellee:**
**Stephanie W. Granger**

**Thomas D. Davenport, Jr.**
**The Davenport Firm**
**1628 Metro Drive**
**Alexandria, LA 71301**
**(318) 445-9696**
**Counsel for Plaintiff/Appellant:**
**Tommie Mack Granger**

**GREMILLION, Judge**.

In this ongoing custody litigation, the father, Tommie Mack Granger, appeals the judgment in favor of the mother, Stephanie W. Granger.[1] For the following reasons, we affirm in all respects.

## FACTUAL AND PROCEDURAL BACKGROUND

In the latest installment of the litigation surrounding custody of their daughter, Savannah Granger, Granger alleges that Barnes has violated several Louisiana laws by relocating Savannah to California.

These parties have litigated over their daughter since 1999, at which time an Orleans Parish Court entered a Consent Judgement awarding Barnes and Granger joint custody with each exercising equal physical custody of Savannah on a two-week rotating basis. This judgment further authorized Barnes' move to Memphis, Tennessee to complete a fellowship program and, further, prohibited Barnes from moving "outside of a 300 mile radius from Alexandria, Louisiana" with the exception being remaining in Memphis.

In August 2000, an Alexandria court rendered a considered decree maintaining joint custody, but naming Barnes the primary custodian and awarding Granger visitation every other weekend from Wednesday to Sunday and summer visitation. At this time, Barnes resided in Little Rock, Arkansas.

In December 2008, the trial court implemented a second considered decree modifying Granger's visitation schedule to Friday through Sunday with extra time in summer. At this time, Barnes was living in Shreveport. Granger appealed that ruling, and we affirmed the visitation schedule in *Granger v. Granger,* 09-272

---

[1]Now Stephanie W. Barnes whom we will refer to as Barnes throughout this opinion.

1

(La.App. 3 Cir. 11/10/09), 25 So.3d 162, *writ denied,* 09-2687 (La. 12/18/09), 23 So.3d 941.[2]

The current dispute involves Barnes' most recent move to Coronado, California. Barnes hand-delivered written notice of the proposed relocation to Granger on August 10, 2010. Barnes filed a Motion for Court Authorization to Relocate Child on August 11, 2010. On August 16, 2010, Barnes filed a First Supplemental and Amending Motion for Court Authorization to Relocate Child, adding the following paragraph to her petition: "Mover shows that defendant does not have any objection to relocating the residence of the child to California, however the parties have not been able to agree on the modified visitation schedule of the child with defendant."

On August 23, 2010, Granger filed a Dilatory Exception of Prematurity arguing that Barnes had not complied with any of the requirements of La.R.S. 9:355.4 because she had already relocated the child to California. He further argued that he should be made primary custodial parent. On August 31, 2010, Barnes filed an Opposition to Dilatory Exception of Prematurity with Incorporated Memorandum of Authorities in which she sets forth facts indicating that Granger was fully aware of the move as early as June 2010, and she attached a note handwritten by Granger in which he set forth various changes in the custody and child support arrangement based on the move to California. On September 7, 2010, Granger filed a Peremptory Exception of Res Judicata arguing that a 1999 consent judgment barred Barnes from relocating Savannah.[3]

_____

[2]We reversed a portion of that judgment pertaining to child support that is not at issue.

[3]The 1999 consent judgment reads:

Plaintiff, Stephanie W. Granger, and the minor child, Savannah

2

Following a hearing on September 27, 2010, the trial court denied Granger's Dilatory Exception of Prematurity and Peremptory Exception of Res Judicata. It further granted Barnes' Motion for Court Authorization to Relocate Child. Granger now appeals and assigns as error:[4]

1. The trial court's overruling of the Dilatory Exception of Prematurity.

2. The trial court's overruling of the Peremptory Exception of Res Judicata.

3. The trial court's failure to follow the mandatory provisions of La.R.S. 9:355.1 after finding that Barnes had not complied with the statute.

4. The trial court's failure to order that the minor child be returned to Louisiana and placed in his custody.

5. The trial court's finding that Barnes met her burden of proving that she complied with La.R.S. 9:355.4. Alternatively, the trial court manifestly erred by ordering Savannah's relocation in the absence of compliance with La.R.S. 9:355.1 et seq.

6. The trial court erred by improperly modifying a considered decree in the absence of any evidence that complies with the *Bergeron* standard and that Barnes failed to meet her burden of proof. Alternatively, the trial court manifestly erred by ordering a change in custody.

## PREMATURITY

The dilatory exception of prematurity asks whether the cause of action

_____

Granger, shall not move outside of a 300 mile radius from Alexandria, Louisiana, however, the sole exception to this agreement is that they shall be allowed to remain in the Memphis, Tennessee area and, in accordance with the provisions of the Louisiana relocation statute, LRS 9:355, et seq., Louisiana shall retain jurisdiction as long as Defendant, Tommie Mack Granger, remains domiciled in Louisiana. . . .

[4]We note that Granger fails to argue his assignments of error individually, thus making it difficult at times to determine which arguments go with which assignments of error. We have addressed the assignments of error out of order as necessary.

has matured such that it is ripe for judicial determination. La.Code Civ.P. art. 926, *Williamson v. Hosp. Serv. Dist. No. 1 of Jefferson,* 04-0451 (La.12/1/04), 888 So.2d 782. An exception of prematurity merely slows down the progress of the action, but does not usually defeat it. La.Code Civ.P. art. 423. We review a trial court's denial of an exception of prematurity under the manifest error standard. *Pinegar v. Harris,* 08-1112 (La.App. 1 Cir. 6/12/09), 20 So.3d 1081.

Louisiana Revised Statute 9:355.3(A) requires a parent exercising primary custody to notify the parent of the proposed relocation of the child's residence. Louisiana Revised Statute 9:355.4 sets forth the specific requirements of notification including notice by registered or certified mail no later than "[t]he sixtieth day before the date of the intended move or proposed relocation." Subsection (2) requires notice no later than the tenth day after the custodial parent knows the information to be furnished if she could not have known the information in time to comply with the sixty-day notice required of Subsection (1).

Barnes concedes that she did not send, by certified mail, notice as required by the statute, but hand-delivered it to Granger on August 10, 2010. However, she argues that Granger knew of the proposed move in advance of August 10. While we do not condone failure to strictly comply with the statutory requirements of notification, it cannot be said that it would be in the best interest of the minor child to return her to Granger in order that Barnes can send him certified mail with notice of her intent to relocate.

The legislature provided the trial court with remedies it may exercise when the parent fails to notify the other parent in accordance with the statute. Louisiana Revised Statute 9:355.6 states (emphasis added):

4

The court *may consider a failure to provide notice* of a proposed relocation of a child or relocation without court authorization as provided by R.S. 9:355.3 and 355.4 as:

(1) A factor in making its determination regarding the relocation of a child.

(2) A basis for ordering the return of the child if the relocation has taken place without notice or court authorization.

(3) Sufficient cause to order the parent seeking to relocate the child to pay reasonable expenses and attorney fees incurred by the person objecting to the relocation.

The trial court took note of the improper notification method in its oral reasons. The best interests of the child trump the procedural requirements of La.R.S. 355.4. Moreover, the other facts and circumstances indicate that Granger knew of the possibility of proposed relocation more than thirty days in advance of the actual move. We find no manifest error in the trial court's denial of the Exception of Prematurity. Accordingly, assignment of error number one is without merit.

## RES JUDICATA

Granger argues that the May 17, 1999 Consent Judgment entered into by himself and Barnes pertaining to Savannah's custody "is res judicata as to any subsequent litigation dealing with the rights contained in that judgment."[5] If this legal argument were valid, then a custody agreement could never be modified on any grounds, which is clearly contrary to the law and the best-interests standard applicable to minor children. Res judicata is a legal principle that is inapplicable to child custody and child support decrees, which are never final and are always subject to modification. *See Kleiser v. Kleiser*, 619 So.2d 178 (La.App. 3 Cir. 1993). Assignment of error number two is without merit.

---

[5]That judgment specifically limited Barnes' ability to move Savannah more than three hundred miles out of Alexandria, Louisiana as set forth in footnote three.

# CUSTODY

In his fourth and sixth assignments of error, and in pleadings before the trial court, Granger argues that he should be named the primary domiciliary parent, therefore, placing custody at issue. In his sixth assignment of error, Granger argues that Barnes failed to meet her burden of proof under *Bergeron v. Bergeron,* 492 So.2d 1193 (La.1986). However, Granger is the party that moved for a change of custody, the event that triggers a *Bergeron* analysis. [6]

A trial court's determination of child custody is entitled to great weight on appeal and will not be disturbed absent a clear abuse of discretion. *AEB v. JBE*, 99-2668 (La. 11/30/09), 752 So.2d 756. The trial court shall award custody of a child in accordance with her best interests. La.Civ.Code art. 131. The best interests of the child are the paramount consideration of the court. *Deason v. Deason*, 99-1811 (La.App. 3 Cir. 4/5/00), 759 So.2d 219. Louisiana Civil Code Article 134 sets forth the factors to be considered when determining the child's best interests.[7]

---

[6]We note that there is some dispute among the circuit as to what triggers a *Bergeron* analysis with some concluding that a change in visitation is sufficient, while others conclude that a change in custody in required. *See Granger*, 25 So.3d 162. We need not address that issue again here as Granger has moved to be named the primary domiciliary parent—a clear change in the considered custody decree—which triggers a *Bergeron* analysis.

[7]The "best interest" factors include:

(1) The love, affection, and other emotional ties between each party and the child.

(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.

The custody arrangement between Barnes and Granger was pursuant to a considered decree rendered in August 2000.[8]  When a considered decree of permanent custody has been rendered, the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. *Bergeron,*  492 So.2d 1193.

Granger's  assertion at trial and on appeal that a change of custody is warranted is unpersuasive.  The issue is whether Barnes' move with Savannah from Shreveport to California is so deleterious as to require the trial court to modify the existing custody decree.  There was no evidence to suggest that Granger would be able to meet this burden of proof.  As discussed in further detail below, the evidence showed it would only be to Savannah's advantage to move to California. Accordingly, the trial court did not abuse its discretion in refusing to modify the existing custody decree.   Thus, the award of joint custody to Barnes and Granger

---

(6) The moral fitness of each party, insofar as it affects the welfare of the child.

(7) The mental and physical health of each party.

(8) The home, school, and community history of the child.

(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.

(11) The distance between the respective residences of the parties.

(12) The responsibility for the care and rearing of the child previously exercised by each party.

[8]See *Granger*, 25 So.3d 162.

7

remains in effect, as does the every-other-weekend visitation schedule that is afforded to Granger. Assignments of error four and six are without merit.

## RELOCATION

The only issue remaining before this court is whether the trial court erred in authorizing Savannah's relocation with her mother to California. Louisiana Revised Statute 9:355.13 sets forth the relocating parent's burden of proof as follows:

> The relocating parent has the burden of proof that the proposed relocation is made in good faith and is in the best interest of the child. In determining the child's best interest, the court shall consider the benefits which the child will derive either directly or indirectly from an enhancement in the relocating parent's general quality of life.

Pursuant to La.R.S. 9:355.12, the factors the trial court shall consider in determining a contested relocation include:

> . . . .

> (1) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in the child's life.

> (2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.

> (3) The feasibility of preserving a good relationship between the nonrelocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.

> (4) The child's preference, taking into consideration the age and maturity of the child.

> (5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the nonrelocating party.

> (6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and

8

the child, including but not limited to financial or emotional benefit or educational opportunity.

(7) The reasons of each parent for seeking or opposing the relocation.

(8) The current employment and economic circumstances of each parent and whether or not the proposed relocation is necessary to improve the circumstances of the parent seeking relocation of the child.

(9) The extent to which the objecting parent has fulfilled his or her financial obligations to the parent seeking relocation, including child support, spousal support, and community property obligations.

(10) The feasibility of a relocation by the objecting parent.

(11) Any history of substance abuse or violence by either parent, including a consideration of the severity of such conduct and the failure or success of any attempts at rehabilitation.

(12) Any other factors affecting the best interest of the child.

Granger argues that Barnes failed to satisfy her burden of proof and that Barnes used the "excuse" that Savannah would be able to attend one of the best acting schools in the nation.

The following testimony was elicited at trial. Granger testified that he first learned of the possibility of the move at a custody exchange at a gas station in Natchitoches, Louisiana sometime in late July. Granger was repeatedly asked why it would be in fifteen-year-old Savannah's best interests to reside with him to which he provided no clear answer. However, he pointed out that attending one of her school plays or a ball game becomes impractical with a cross-country move. Granger admitted to making notes about the proposed relocation at a meeting in which he and his wife, Savannah, and Barnes were present. He admitted bargaining and negotiating child support payments, visitation schedules, and various "stipulations" regarding the move to California. When questioned again about his daughter's best interests, the

9

following colloquy occurred:

> Q. If the judge granted the relocation and worked out your visitation, is that something that you think is in Savannah's best interest.
>
> A. Repeat your question.
>
> Q. I said if the judge granted the relocation and worked out the visitation schedule in the most favorable terms and conditions to you, would that satisfy your needs?
>
> A. No. Because I – I think the needs here are for her mom to quit making derogatory statements about me and interfering with my relationship with Savannah. I think she needs to be protected from her mom's attorney, who also makes derogatory statements.

Granger then proceeded to inform Barnes' counsel that he would be contacting the Louisiana Attorney Disciplinary Board regarding this alleged behavior. Granger provided no testimony as to why he should be made the primary custodial parent or why the relocation was not in Savannah's best interest.

Barnes testified that she is originally from California and is currently residing in her mother's house in California. She testified that she was injured in an automobile accident in December 2009 that caused her to be permanently disabled from her employment as a surgeon. Barnes testified that following a visit to California in June to visit her mother, Savannah "fell in love" with the area. Barnes' current husband, Jim Barnes, was a practicing bariatric surgeon in Shreveport. Barnes testified that they attended a Bariatric Society Meeting in late June in which Jim was invited to California to interview for an opening in a bariatric partnership. Barnes said that Jim was made an offer of employment shortly after the fourth of July. However, she said that Savannah had informed Granger of the possibility of the move following Jim's first interview in June.

Barnes said that she personally first informed Granger of the possibility

10

of the move in late July when they were exchanging Savannah at a gas station in Natchitoches, Louisiana. She said that the second time she informed him was on August 10 at his home at which time she hand-delivered written notice to him of the intended move. The notice is three pages long and details the reasons for relocation.[9] Barnes presented the California high school calendar to Granger so that visitation could be arranged according to holidays and the schedule. She testified that Granger made various notes on the back of the schedule negotiating child support and other things.

Barnes said that Savannah had been in school since August 19 and had visited Granger every other weekend, at her cost, pursuant to their currently existing visitation schedule. Barnes stated that she did not move to California to punish Granger and that she felt the move was in Savannah's best interest. She detailed the opportunities available in the area and the community. At the close of the evidence, the trial court stated:

> [I]t's the ruling of this Court that the child is to remain with the mother in California, and that she is to continue to visit as originally ordered, and the – the parents are to share the expense. When mother sends her, mother has to pay for it; when father sends her back, father pays for it. Every other – everything else in previous rules are to be maintained.
>
> And let me give you some reasons. First of all, based upon the history of this case and the fact that this is not the first time that I sit on – on issues in this case, that under the circumstances, the Court believes that the – it is in the full interest of the child, at this time, to remain with the mother; because she is older than the original ruling in this case, and because she had problems with spending time with her father, in the first place.
>
> I granted joint custody because father has a right to exercise it. I used the – power of this court to maker her interact with her father because we had a baby about to rule the nest here, and we couldn't have that. And I played the tyrant and made her visit with her father, as she

---

[9]The notice meets the various requirements outlined in La.R.S.9:355.4(B).

11

continues to do and must continue to do as long as she is a minor.

Now mother should not object about paying to send the child here because she did not follow the statute fully when she moved to California. Though, this Court deems, as a practical matter and in the best interest of the child, her giving the signed Proposal and Notice of her move, together with the caveat "seek legal counsel if you have an objection," was sufficient and practical not only under the law, but in everyday exercise of custodial jurisdiction over a child.

And, for that reason, that is the order of this Court.

The trial court found, and this record (as well as past records) reflects that Savannah has spent the majority of the time with her mother. Granger, a cardiovascular surgeon, has a demanding job that requires that he be away from home for extended periods of time. Moreover, it is overwhelmingly clear that the litigation is not at all about Savannah's best interests, but rather the animosity between the former spouses.

We find the trial court did not abuse its discretion in allowing the relocation of Savannah to California. Barnes is originally from the area, her husband accepted employment there, her mother lives there, opportunities abound for excellent and specialized educational opportunities for Savannah, Savannah has always primarily lived with her mother and expresses a preference to live with her, and these parties have ample financial resources to facilitate visitation as set forth in the joint custody decree. Granger offered no evidence whatsoever to suggest that it would be in Savannah's best interest if she resided with him. Accordingly, assignments of error three and five are without merit.

**CONCLUSION**

The trial court's judgment denying Granger's Exception of Prematurity and Exception of Res Judicata is affirmed. The trial court's judgment authorizing the

relocation of the minor child to Coronado, California is affirmed.  All costs of this appeal are assessed to plaintiff/appellant, Tommie Mack Granger.

**AFFIRMED.**